IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LATOSHA ROBBINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:12-CV-674-CSC |
| ) | (WO) |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER OF ) | |
| SOCIAL SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction.**

On June 3, 2009, Latosha Robbins protectively applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that she was unable to work because of a disability. (R. 21). Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. On June 12, 2012 the Appeals Council rejected a subsequent request for review. (R. 1). The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social

131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[3] Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...

To make this determination[4] the Commissioner employs a five step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

Security matters were transferred to the Commissioner of Social Security.

[3] Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must, however,] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

---

[5] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

### III.  The Issues

**A.     Introduction.**

Robbins was 35 years old at the time of the hearing before the ALJ.  (R. 38, 159). Robbins's prior work experience includes work as a housekeeping cleaner and as a napping machine tender.  (R. 50).  Robbins last worked as a napping machine tender until December 2007, when the factory in which she worked was closed.  (R. 152).  Thereafter, she was unemployed and began attending community college, but did not complete a post-secondary degree.  (R. 166).

**B.     The Findings of the ALJ**

The ALJ found that Robbins met the insured status requirements of the Social Security Act through December 31, 2013.  (R. 21).  Further, the ALJ found that Robbins had the following severe impairments: morbid obesity, status post right ankle fracture, open reduction internal fixation.  (R. 23).

The ALJ concluded that Robbins does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 17).

Following the administrative hearing, the ALJ concluded that Robbins

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can frequently lift or carry up to 10 pounds, and occasionally lift or carry up to 20 pounds. She can sit for 6 hours total in an 8-hour day, and at one time for 1-2 hours without interruption. She can stand/walk for 4-6 hours total in an 8-hour day, and at one time for 30 minutes to 1 hour without interruption. The claimant requires a sit/stand

> option, which takes into account the time limitations for sit/stand/walk activities, plus all allowable and customary breaks that are normally available in the work place environment. She has no demonstrated issues of limitation in the use of the hands for simple grasping or fine manipulation and the pushing and pulling of hand controls. She is limited to occasional use of her right leg and foot for repetitive movements such as the pushing and pulling of foot controls, with no limitations on the use of the left leg and foot. She is limited to occasional bending, stooping, crawling, climbing, use of stairs, crouching and kneeling. She should never balance. The claimant is precluded from climbing ladders, ropes or scaffolds and from participating in activities involving unprotected heights, hazardous or moving machinery or driving commercial vehicles. In addition, the claimant suffers from mild to moderate pain, which occasionally interferes with her concentration, persistence and pace.

(R. 24).

**C. The Plaintiff's Claims.**

As stated by the plaintiff, her claims are

1. Whether the ALJ erred in failing to find a period of disability of at least twelve months; and

2. Whether the ALJ's residual functional capacity findings are based on substantial evidence.

(Doc. 13 p. 1).

## IV. Discussion

**A.   The ALJ did not commit reversible error in failing to find a period of disability of at least twelve months.**

On May 7, 2008, Robbins was attending a school field trip to a firehouse with her daughter. (R. 42). As part of a demonstration of the firehouse facilities, the firemen talked Robbins into sliding down the fire pole and promised to catch her if she fell. (R. 42). Nine

5

feet from the floor, Robbins lost her grip on the fire pole and plummeted to the floor. (R. 42, 222). No fireman was there to catch her. (R. 42). On landing, she "suffered a significantly displaced distal intra-articular tibia fracture with fibular fracture." (R. 222).

It is undisputed that, at the time Robbins initially suffered the ankle fracture in May 2009, she was unable to work due to the injury. (R. 69; Doc. 14 p. 6). Thereafter, Robbins underwent two surgeries on her ankle followed by a significant period of time healing from the injury. Following her surgery, Dr. David Volgas noted on June 22, 2009 that Robbins was "doing okay" and that she was "not weight bearing" on her right ankle, "nor should she be." R. 228. On September 14, 2009, Robbins again reported to Dr. Volgas for a follow-up visit for care of the fracture and, at that time, Dr. Volgas noted that Robbins "is doing pretty well. . . . At present we just need to have her start weight bearing. I will plan on seeing her back here in about six weeks." (R. 255). An x-ray performed on September 14, 2009, noted "progressive interval healing" of the fractures, as well as the fact that Robbins arrived in her own wheel chair. (R. 254). On October 26, 2009, Robbins reported for a follow-up x-ray in her own wheel chair, and the x-ray indicated that "there has been progressive healing of the right ankle since the prior exam of 14 September 2009. There has been no change of hardware position. There is no loosening of the hardware." (R. 253).

On July 1, 2010, Robbins consulted Dr. Paul Goldhagen, who noted that an x-ray indicated that Robbins's surgical hardware was intact and that the fracture was "healed." (R. 258). Dr. Goldhagen noted that Robbins's gait was antalgic and diagnosed chronic ankle

pain secondary to the fracture and surgical procedure. (R. 258).

At the July 29, 2010 hearing in this case, Dr. Robert Anderson, a non-examining physician, testified at the request of the ALJ after listening to Robbins's testimony and reviewing her medical records. According to Dr. Anderson, Robbins's medical record reflected "uneventful healing of the fracture" and "some post-traumatic pain in the left [sic] ankle." (R. 48). He also noted that Robbins was "obese,"[6] although "there [were] no obesity complications documented in the medical record." (R. 49). In Dr. Anderson's opinion, Robbins's condition limited her to light work "with a sit/stand option." (R. 49).

Based on the evidence, including the medical record and Dr. Anderson's opinion, the ALJ found that, from the date of alleged disability onset through the date of his July 22, 2010, decision, Robbins was limited to light work with a number of limitations on her ability to use her right leg and foot and on her ability to sit, stand, and walk, including the necessity of a sit/stand option. (R. 21, 24).

Under the social security regulations, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). In Robbins's view, the medical evidence could support a finding that the period of healing was so protracted that, even if she was not disabled on the date of the ALJ's decision, she was nevertheless unable to work due to pain

---

[6]Robbins is 5'2" tall and weighs 338 pounds. (R. 37, 151).

7

and swelling in her right ankle as of May 7, 2009, one year after the initial injury. Robbins argues that the ALJ therefore erred because he "did not bifurcate his findings in any way" to indicate whether he found that Robbins was sufficiently healed of the ankle fracture prior to May 7, 2009 that she was no longer disabled at that point in time.

Robbins cites no authority for the proposition that, in a case of progressive healing, the ALJ must expressly bifurcate his findings to specify the exact point in time at which an injury no longer prevents the claimant from engaging in substantial gainful activity. Further, it is the plaintiff, not the Commissioner, who bears "a very heavy burden" of demonstrating that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5)(A); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) ("An individual who files an application for Social Security disability benefits must prove that she is disabled."). None of the evidence cited by Robbins (Doc. 13 pp. 5-7) indicates that Robin was insufficiently healed by May 9, 2009, to engage in substantial gainful activity.

Moreover, even if there existed some evidence to support Robbins's theory that her disability lasted for twelve months, this court does not review the evidence or the decision of the ALJ *de novo*. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The record, including the medical evidence, substantially supports the ALJ's finding that Robbins "has not been under a disability within the meaning of the Social Security Act from May 7, 2009 through the date of [the ALJ's] decision." (R. 21). Therefore, the ALJ's decision is due to

be affirmed. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.").

**B.     The ALJ's residual functional capacity determination was based on substantial evidence.**

Citing Social Security Ruling 96-8P, Robbins argues that the ALJ erred by not requiring the nonexamining medical expert to provide a function-by-function analysis of her residual functional capacity. (Doc. 11 p. 8). To the extent that SSR 96-8P is binding on the Commissioner,[7] *see* 20 C.F.R. § 402.35(b)(2); *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981),[8] SSR 96-8P does not require that a nonexamining medical expert must provide a function-by-function analysis of the claimant's residual functional capacity. Rather, consistent with the regulations, SSR 96-8P provides that the determination of a claimant's residual functional capacity is a legal determination reserved to the Commissioner, not to a nonexamining medical expert, and that this determination is to be based on "all of the relevant evidence in the case record." SSR 96-8P ("The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."); *see also* 20 C.F.R. § 404.1527(d)(2) (providing that

---

[7] Social Security Rulings do not have the force of law and are not binding on the court. *Jones v. Commissioner of Soc. Sec.*, 423 Fed. Appx. 936, 939 n.4 (11th Cir. 2011).

[8] *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

9

determination of residual functional capacity is not a medical opinion, but a legal determination reserved to the Commissioner); 20 C.F.R. § 404.1545 (a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). In this case, the ALJ did not err in considering the testimony of the nonexamining physician and the evidence as a whole in determining that, despite pain and limited functionality in her right foot and leg, Robbins had the residual functional capacity to perform light work with certain limitations such as a "sit-stand option." *See* 20 C.F.R. § 404.1545(a)(3) (providing that, in determining a claimant's residual functional capacity, "[w]e will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.").

Robbins argues that a consultative examination should have been ordered because the medical evidence was insufficient for the ALJ to determine that she could perform light work with limitations such as a sit-stand option. Specifically, Robbins argues that "[i]t is not clear [from the record] why there was no further follow-up" by Dr. Volgas after October, 2009, "or under what circumstances [Robbins] was seen by Dr. Goldhagen. However, based on [Dr. Goldhagen's] limited clinical findings, an orthopedic examination with X-rays was warranted in order to more accurately assess [Robbins's] ability to return to the workforce." (Doc. 13 p. 9). Robbins's argument fails to recognize that, "[in] general, [the claimant is] responsible for providing the evidence [the Commissioner] will use to make a finding about [the claimaint's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3). Robbins, not a

10

consulting physician, would have been the proper source of information as to why Robbins did not receive further follow-up care from Dr. Volgas or the "circumstances" under which Dr. Goldhagen performed his examination.  In fact, the ALJ *did* ask Robbins whether she was seeking continuing medical care and why she had consulted Dr. Goldhagen in July 2010, and Robbins explained that she chose to consult Dr. Goldhagen rather than Dr. Volgas because Dr. Goldhagen's office was located closer to Robbins's home.  (R. 42).

Further, a consultative examination will be ordered for the purpose of determining a claimaint's residual functional capacity only "if necessary" after the Commissioner has made "every reasonable effort to help [the claimaint] get medical reports from [her] own medical sources."  20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 404.1512 ("Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources.").  Robbins fails to recognize that her own medical source, Dr. Goldhagen, *did* perform a orthopedic exam, including review of x-rays which showed that the fractures had "healed" and that Robbins's surgical hardware was intact. Robbins argues that an additional examination would have provided information that was more "accurate and up[-]to[-]date," but she identifies no particular inaccuracy or insufficiency in Dr. Goldhagen's orthopedic examination, and she does not specify what additional necessary information another orthopedic examination or another x-ray could have provided.  Further, there is no merit in Robbin's suggestion that the medical record available to the ALJ was outdated; Dr. Goldhagen's examination was performed only two weeks prior

11

to the hearing before the ALJ.  Accordingly, there is no reason to conclude that a consultative examination could have provided necessary information that was not already provided by Robbins's treating physicians, and ALJ did not err in failing to order a consultative examination.  *See* 20 C.F.R. § 404. 1519(a) (providing that the Commissioner will order consultative examination "when we cannot get the information we need from your medical sources.").

Robbins argues that the ALJ erred in "suggest[ing] that if [Robbins] were to diet and exercise, her medical conditions would improve such that she would be more physically fit and able to do more."  (Doc. 13 p. 8). The court has considered the context of the ALJ's observation that Robbins would be able to "do more" "in the future" if she dieted and exercised to lose weight and become more physically fit (R. 27), and it is clear from the ALJ's discussion that this observation did not provide any basis for the ALJ's residual functional capacity determination.  *See U.S. v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) ("'We have defined dictum as a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding.'" (quoting *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir.1988)).  Instead, the ALJ's residual functional capacity determination was based on Robbins's physical condition "from May 7, 2009 through" the date of the ALJ's decision (R. 21), including the observation, based on medical evidence and the evidence as a whole, that Robbins "is a younger individual and . . . is not *presently* manifesting any serious medical symptoms or issues that could be

particularly impacted by her obesity *at this time*." (R. 27 (emphasis added)). Thus, while the ALJ "noted" Robbins's "obesity in assessing a reduced residual functional capacity," taken in context, the ALJ's statement about the possibility of future improvement with weight loss did not provide a basis for the ALJ's findings; rather, the statement was mere dicta suggesting that, at some point in the future, Robbins could develop a more expansive residual functional capacity than that assigned to her the time of the ALJ's opinion. Because the statement made by the ALJ about the possibility of future improvement with diet and exercise was superfluous to the ALJ's decision, that statement cannot establish the basis for reversal, whether or not it was speculative or supported by substantial evidence. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (holding that the harmless error rule prevented reversal of an ALJ's decision).

## V. Conclusion

For the reasons as stated, the court concludes that the decision of the Commissioner denying benefits to Robbins should be affirmed. *See Landry v. Heckler*, 782 F.2d 1551, 1551-52 (11th Cir. 1986) ("Because the factual findings made by the [ALJ] . . . are supported by substantial evidence in the record and because these findings do not entitle [the claimant] to disability benefits under the appropriate legal standard, we affirm.").

The Court will enter a separate final judgment.

Done this 25th day of March, 2013.

                                      /s/Charles S. Coody
                                CHARLES S. COODY
                                UNITED STATES MAGISTRATE JUDGE